BONNIE WARMACK AND BETTY WARMACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warmack v. Commissioner
Docket No. 8200-87
United States Tax Court
T.C. Memo 1992-431; 1992 Tax Ct. Memo LEXIS 454; 64 T.C.M. (CCH) 320; July 29, 1992, Filed *454 Decision will be entered for respondent. For Bonnie M. Warmack, pro se. For Respondent: Dennis G. Driscoll. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a deficiency in petitioners' income tax of $ 13,748 for 1982, and additions to tax under sections 6653(b)(1) and (2), and 6661 for 1982. Petitioner Bonnie Warmack and respondent stipulated that petitioner Bonnie Warmack has a $ 7,799 deficiency and no additions to tax for 1982. The sole issue for decision is whether petitioner Betty Warmack filed a joint Federal income tax return with her husband, petitioner Bonnie Warmack, for 1982. We hold that she did. FINDINGS OF FACT 1. Petitioners
Petitioners resided in Detroit, Michigan, when they filed their petition. Bonnie Warmack is an osteopathic physician (D.O.). He served in the Persian Gulf War as a flight surgeon. Petitioners filed a joint return for 1980. Bonnie Warmack originally filed a separate return for 1981. Petitioners later filed an amended 1981 return electing joint filing status. Betty Warmack had a checking account at the National Bank of Detroit in 1982. Bonnie Warmack did not maintain any bank accounts *455 in his name during 1982. Betty Warmack had net income of $ 480 in 1982. In 1982, Bonnie Warmack received $ 34,700 in checks from his professional corporation, Covington Clinic, Inc. Both petitioners endorsed all but four of these checks. The checks were then deposited into Betty Warmack's checking account. William J. Ivery (Ivery) has prepared Betty Warmack's tax returns for 20 years, and he continues to do so. They met in college almost 30 years ago. 2. Petitioners' 1982 Returns
Petitioners filed a joint Federal income tax return for 1982 on February 16, 1984. The return included both petitioners' income. Petitioners did not sign the return. Their income tax preparer, Ivery, signed the return. While Ivery was out of the country in June 1984, one of his employees, Gail Martin (Martin), prepared an amended 1982 return which did not include Bonnie Warmack's dividend income, but which did include his business deductions. However, Martin did not change the filing status from joint to separate. Ivery's receptionist prepared the heading for the amended return, and checked the box for married filing jointly. Petitioners' amended return contained the following explanation *456 for the change to the return: "Corporation income put on personal return in error on original return under dividend income." It did not state that petitioners' filing status was incorrect on the original return. Petitioners filed the amended return for 1982 on October 30, 1984. Petitioners and Ivery signed the amended return. Petitioners did not file another amended return for 1982 to change their filing status. Betty Warmack's income was reported on both the original and amended 1982 returns. OPINION The issue for decision is whether petitioners filed a joint return for 1982. Petitioners argue that they did not intend to file a joint return for 1982. Petitioners claim that Betty Warmack did not knowingly execute the amended return. Rather, petitioners contend that the amended return showed joint filing status on it due to clerical errors committed by Ivery's staff. Petitioners assert that Betty Warmack presented valid defenses of mistake and inadvertence. . Whether an income tax return is a joint return depends on the intent of the spouses. The presence or absence of the signature of one spouse is *457 not determinative. , vacating and remanding ; . The determination of the spouses' intentions is a question of fact. , affg. in part, revg. in part . Petitioner Betty Warmack bears the burden of proving that she intended to file a separate return for 1982. Rule 142(a); . If the spouse signed the joint return as the result of a mistake or deception by the other spouse, the signature need not be recognized. ; ; . The question is whether a spouse's act in signing the return is the knowing and voluntary affixing of his or her signature to a joint return. Ivery testified that Betty Warmack had instructed him to file a separate *458 return for her for 1982, but his staff did not properly prepare it. Ivery stated that petitioners did not sign the original 1982 return, and they returned it to him because they wanted to file separately. Ivery testified that petitioner Betty Warmack wanted to file a separate return for 1982 because she was beginning a career in real estate at about that time. The record shows that petitioner Betty Warmack signed the original and amended returns, knowing them to be returns. Ivery testified that Betty Warmack signed the amended return without checking it because of her longstanding business relationship with Ivery. However, she was not deceived as to what she was signing. Ivery testified that Betty Warmack had instructed him to prepare a separate return for her. Ivery stated that he discovered that the amended return was filed as a joint return several months later when the IRS contacted him about it, and that Betty Warmack again told him that she did not intend to file a joint return for 1982. Yet, petitioners did not attempt to remedy the alleged error by filing amended separate returns. Petitioners did not raise *459 this issue in their petition filed March 30, 1987. Petitioners first raised this issue after respondent filed a motion to dismiss for lack of prosecution (filed April 1, 1988). This delay was not explained; we do not think it was due to oversight. These facts suggest that petitioners did not inadvertently sign the joint return. . Petitioner Betty Warmack did not testify at the trial, although she was present. We believe her testimony would have provided the best evidence of her intention to file a joint or separate return for 1982. Her failure to testify gives rise to the presumption that her testimony would not have been helpful to her case. , affd. . Petitioners also argue that Ivery's testimony at trial shows that at all times relevant petitioners intended to file separate returns. . We disagree. Petitioners did not sign the original 1982 return, but elected joint filing status on it. Petitioners signed *460 the amended return, on which they also elected joint filing status. Petitioners did not explain why Bonnie Warmack signed the amended return if it was intended to be Betty Warmack's separate return. Further, Betty Warmack did not explain why she signed the amended joint return if she intended to file a separate return. Although dividend income of Bonnie Warmack was subtracted from the amended return, his employee business expenses were not. Further, the reason given for the change to the return was that Bonnie Warmack's corporation income was incorrectly included on his individual return. It did not state that petitioners' filing status was incorrect on the original return. Ivery testified that this meant petitioners did not intend to file jointly. However, this interpretation is belied by the fact that it included Bonnie Warmack's business deductions, joint return status was checked, and both petitioners signed. On the basis of the record before us, we conclude that petitioners intended the 1982 return to be a joint return. Notwithstanding Ivery's testimony, petitioners have failed to overcome the objective evidence indicating that they intended to file a joint return for *461 1982. Accordingly, Decision will be entered for respondent.